IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-03104-PAB-STV

EDWARD DWIGHT,

    Plaintiff,

v.

THIRD WORLD PRESS FOUNDATION, INC.,

    Defendant.

---

**ORDER**

---

This matter is before the Court on Plaintiff's Motion for Default Judgment [Docket No. 18] and Motion for Status Conference or Hearing [Docket No. 19].

### I. BACKGROUND

#### A. Factual Allegations[1]

Plaintiff Edward Dwight owns the copyright to a literary work titled *SOARING ON THE WINGS OF A DREAM: The Struggles & Adventures of the "First Black Astronaut" Candidate* (the "Book"). Docket No. 1 at 1, 4, ¶¶ 1, 22; Docket No. 1-2 at 2. The Book is autobiographical. Docket No. 1 at 2, 5, ¶¶ 2, 25. Defendant Third World Press Foundation, Inc. ("Third World Press") is a book publishing company located in Chicago, Illinois. *Id.* at 2, 4, ¶¶ 3, 19. In 2009, Mr. Dwight met with Third World Press to discuss the possibility of it publishing his Book. *Id.* at 5, ¶¶ 32-33. Ultimately, Mr. Dwight

---

[1] Because of the Clerk of Court's entry of default against defendant, *see* Docket No. 16, the factual allegations in plaintiff's complaint, Docket No. 1, are deemed admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

decided to self-publish the Book and withdrew the Book from Third World Press's control.  *Id.* at 6, ¶¶ 35-36.  Nevertheless, without Mr. Dwight's consent, Third World Press has sold copies of the Book on online distribution channels, such as Amazon.  *Id.* at 6-7, ¶¶ 43, 47, 50.  Third World Press's version of the Book contains several unauthorized modifications, including the addition of photographs of Mr. Dwight and a forged signature.  *Id.* at 8, ¶ 53.  On September 17, 2024, Mr. Dwight served a cease-and-desist letter on Third World Press demanding that it stop marketing and distributing infringing copies of the Book.  *Id.* at 10, ¶ 73.  Third World Press never responded to the letter and continues to infringe Mr. Dwight's work.  *Id.* at 10-11, ¶¶ 74-75.

### B. Procedural History

Mr. Dwight filed this lawsuit on November 6, 2024.  Docket No. 1.  Mr. Dwight asserts claims against Third World Press for (1) copyright infringement under 17 U.S.C. § 501 and (2) false designation of origin under 15 U.S.C. § 1125(a)(1)(A).  *Id.* at 11-15, ¶¶ 76-99.

On November 8, 2024, Mr. Dwight served Third World Press.  Docket No. 8.  Third World Press has not made an appearance in this action.  On January 13, 2025, the Clerk of the Court entered default against Third World Press.  Docket No. 16.  On March 28, 2025, Mr. Dwight filed the motion for default judgment.  Docket No. 18.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55.  First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v.*

2

*Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("a workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2023 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts

3

constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id*.  A court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002).  Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

### III.  ANALYSIS

#### A.  Jurisdiction

Before addressing the merits of plaintiff's motion for default judgment, the Court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over Third World Press.  *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

##### 1.  *Subject Matter Jurisdiction*

The Court finds that it has subject matter jurisdiction over Mr. Dwight's claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).  Section 1331 confers federal district courts with jurisdiction over "all civil actions arising under the . . . laws . . . of the

4

United States." Thus, because Mr. Dwight's copyright infringement claim and his false designation of origin claim both arise under federal law, the Court has subject matter jurisdiction. Moreover, 28 U.S.C. § 1338(a) confers federal district courts with jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights and trademarks." Accordingly, this provides the Court with an alternative basis to exercise subject matter jurisdiction over Mr. Dwight's claims.

### 2. Personal Jurisdiction

Plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988); *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). Plaintiff can satisfy its burden by making a *prima facie* showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). A court will accept the well-pled allegations of the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). However, "[c]onclusory allegations as to the transaction of business, devoid of further factual support, are insufficient to establish a good faith basis for personal jurisdiction over a defendant." *Ryuunosuke Takeshige v. Rich Board, LLC*, No. 20-cv-1262-WJM-KLM, 2021 WL 2351036, at *2 (D. Colo. June 9, 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further. *AST Sports Sci., Inc.*, 514 F.3d, at 1057. The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.*

5

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

Furthermore, proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit."). Without proper service, the Court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

### a. Service of Process

The Court first considers whether plaintiff properly served Third World Press. The Federal Rules of Civil Procedure provide that a corporation, partnership, or unincorporated association can be served "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1).

On November 8, 2024, a private process server personally served the summons to Third World Press's listed address, identifying Anton Lindsey as the person with whom the documents were left. Docket No. 8. The Illinois Secretary of State's website lists Antoine Lindsey as Third World Press's registered agent. Business Entity Search, https://apps.ilsos.gov/businessentitysearch/businessentitysearch (last visited Dec. 23, 2025). The Court presumes that this discrepancy is a typographical error and that service was proper under Fed. R. Civ. P. 4(h)(1)(B).

### b. General Jurisdiction

General jurisdiction extends to "any and all claims" brought against a defendant, including claims that have no relation to the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted). A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state. *Id*. For corporations, "the place of incorporation and principal place of business are 'paradig[m]... bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137 (citation omitted); *see also Ford Motor Co.*, 141 S. Ct. at 1024. Mr. Dwight states that Third World Press is "a nonprofit corporation formed under the laws of Illinois with

7

its principal place of business located [in] . . . Chicago, Illinois." Docket No. 1 at 4, ¶ 19. Mr. Dwight does not state any facts that would render Third World Press "essentially at home" in Colorado. Accordingly, the Court finds that Third World Press is not subject to general jurisdiction in Colorado.

### c. Specific Jurisdiction

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017). That is, "[a] plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts." *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)). In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

The specific jurisdiction analysis is two-fold. First, a court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King*, 471 U.S. at 472, and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum

8

State." *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). "They must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id*. (citation omitted). Second, if a defendant's actions create sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 105. The court considers several factors as part of this analysis, including: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

    Mr. Dwight argues that the Court has specific jurisdiction over Third World Press because Third World Press marketed and sold infringing copies of the Book to Colorado residents. Docket No. 18 at 7-8. However, the only factual support Mr. Dwight provides are screenshots of a Colorado resident purchasing one copy of the infringing Book on Amazon. Docket No. 1-1. The claim that Third World Press *marketed* the book to Colorado residents is "vague and conclusory, and does not set forth a colorable basis for the Court's exercise of personal jurisdiction." *Ryuunosuke Takeshige*, 2021 WL

2351036, at *2. Therefore, the only basis for jurisdiction supported by facts is that Third World Press sold a Colorado resident a copy of the infringing Book via Amazon.

Courts have been divided on whether an out-of-state defendant is subject to specific jurisdiction for selling products via an online website to consumers in a specific state. *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023) (holding that selling products on Amazon to Arizona residents created sufficient connections to Arizona for the exercise of personal jurisdiction); *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) (holding that selling an infringing product on Amazon and shipping it to an Illinois address created sufficient connections to Illinois for the exercise of personal jurisdiction); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171-72 (2d Cir. 2010) (holding that selling a product online to New York buyers created sufficient connections to New York for the exercise of personal jurisdiction); *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 953 (8th Cir. 2022) (holding that selling a product online to a Missouri consumer was not sufficient to establish personal jurisdiction); *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783 (5th Cir. 2021) (holding that selling a product online to Louisiana residents was not sufficient to establish personal jurisdiction when the website did not specifically target Louisiana). The Ninth, Seventh, and Second Circuits have found that selling a product online can be sufficient to establish personal jurisdiction, while the Eighth and Fifth Circuit have found that something more than mere online sales is required.

The Tenth Circuit has not yet discussed whether specific jurisdiction can be established through online sales. However, courts in this District have found that, in cases involving online sales, "minimum contacts can be established on the basis of the

10

substantial or regular flow of sales from a non-resident company to residents of the forum state." *SEBO Am., LLC v. Red Vacuums LLC*, No. 23-cv-0116-WJM-SBP, 2024 WL 964816, at *3-4 (D. Colo. Mar. 6, 2024) (collecting cases). For example, in *Otter Prods., LLC v. Big Birds,* LLC, No. 19-cv-00626-DME-KLM, 2019 WL 13102793, at *1-2 (D. Colo. Aug. 9, 2019), the court found that plaintiff sufficiently alleged that defendants had minimum contacts in Colorado based on allegations that (1) defendants "have made substantial and regular sales of infringing products bearing Plaintiffs' trademarks to Colorado," including "at least fifty such sales" occurring over a three month period; and (2) defendants "continue to regularly sell a high volume of other infringing products bearing Plaintiffs' trademarks into Colorado." (internal alterations omitted). In *Otter Prod., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019), *report and recommendation adopted*, 2019 WL 6888276 (D. Colo. Dec. 18, 2019), the court found that plaintiffs established specific personal jurisdiction over defendants based on allegations that defendants sold and shipped 341 infringing products to Colorado consumers via Amazon for over a year, in addition to shipping over 1,000 other products to Colorado during the same time period. By contrast, in *Red Vacuums*, the court found that SEBO failed to establish that defendant had sufficient minimum contacts in Colorado because SEBO's evidence only showed that defendant received seven online orders from consumers in Colorado, including six orders from plaintiff's counsel, and defendant only shipped one order to Colorado. *Red Vacuums*, 2024 WL 964816, at *5. The court found that "seven orders" was distinguishable from the "high volume" of sales in *Big Birds* and *Phone Rehab*. *Id*. Similarly, in *SEBO Am., LLC v. Mega Mart*

11

*Warehouse LLC*, No. 22-cv-02898-PAB-KAS, 2024 WL 1257534, at *4-6 (D. Colo. Mar. 25, 2025), this Court found that four orders placed on Amazon were insufficient to establish minimum contacts in Colorado.

The Court finds that Mr. Dwight has not provided sufficient jurisdictional allegations to establish that Third World Press has minimum contacts in Colorado. Although Mr. Dwight alleges in the complaint that Third World Press actively markets and sells the infringing Book to Colorado residents, *see* Docket No. 1 at 3, ¶ 15, the only example Mr. Dwight provides is the sale of one book on Amazon.  Docket No. 1-1. Just as the seven orders were insufficient to establish minimum contacts in *Red Vacuums*, the single order here is also insufficient to establish minimum contacts.  *See Red Vacuums*, 2024 WL 964816, at *5.

Mr. Dwight argues that specific jurisdiction exists when out-of-state media defendants nationally distribute printed material.  Docket No. 18 at 7 (citing *Keeton*, 465 U.S. 770).  However, this overstates the holding in *Keeton*.  There, the Court found that specific jurisdiction existed when the defendant regularly circulated thousands of magazines to monthly subscribers in the forum state.  *Keeton*, 465 U.S. at 774.  The Court stated that this number of regular sales "[could not] by any stretch of the imagination be characterized as random, isolated, or fortuitous."  *Id.*  This is not the case with the single online sale shown here.  Thus, *Keeton* does not provide support for the Court to exercise specific jurisdiction.

Mr. Dwight may be able to plead facts demonstrating that the Court has specific personal jurisdiction over Third World Press, but he has not done so at this stage. Accordingly, the Court will deny the request for default judgment without prejudice for

12

failure to plead sufficient facts showing personal jurisdiction. *See United States v. Noell*, No. 22-cv-02538-PAB-SP, 2023 WL 4204669, at *5 (D. Colo. June 27, 2023) (denying default judgment motion without prejudice for failure to plead sufficient personal jurisdiction allegations). Moreover, because the Court will deny the request for default judgment, the motions for a status conference or hearing, Docket Nos. 19 and 20, are moot and will also be denied.

## IV. CONCLUSION

It is therefore

**ORDERED** that Plaintiff's Motion for Default Judgment [Docket No. 18] is **DENIED without prejudice**. It is further

**ORDERED** that Plaintiff's Motion for Status Conference or Hearing [Docket No. 19] is **DENIED**. It is further

**ORDERED** that Plaintiff's Second Motion for Status Conference or Hearing [Docket No. 20] is **DENIED**.

DATED December 31, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge